## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **SCOTT MacTAGGERT, on behalf of the Extreme Engineering Solutions, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PROFESSIONAL FIDUCIARY SERVICES, LLC; JOHN MICHAEL MAIER; ROBERT S. SCIDMORE; and BRET FARNUM,**<br><br>**Defendants.** | **Case No.**  22-cv-371 |

## COMPLAINT

Plaintiff Scott MacTaggert, by his undersigned attorneys, on behalf of the Extreme Engineering Solutions, Inc. Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of his counsel, and upon information and belief as to all other matters, as to which allegations he believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Scott MacTaggert ("Plaintiff") brings this suit against Professional Fiduciary Services, LLC ("PFS") and its president John Michael Maier (together, the "Trustee"), the trustee for the Extreme Engineering Solutions, Inc. Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Extreme Engineering Solutions, Inc. ("Extreme Engineering") in 2019; and selling shareholders Robert S. Scidmore, Bret Farnum, and other

individuals or entities that will be identified after a reasonable opportunity for further investigation or discovery ("Selling Shareholders").

2.     Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of Extreme Engineering allocated to his account in the Plan.

3.     This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when it caused the Plan to buy shares of Extreme Engineering for more than fair market value and other relief.

4.     As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.     At all relevant times, Extreme Engineering was a privately held company and a party in interest to the Plan. Extreme Engineering adopted the Plan effective January 1, 2018. In January 2019, Selling Shareholders sold 896,000 shares of Extreme Engineering common stock to Extreme Engineering, representing 100% of the outstanding shares of the company's common stock. Simultaneously, the Plan purchased 358,400 shares of Extreme Engineering common stock from Extreme Engineering for $80,377,400, representing 100% of the outstanding common stock of the company, which was financed by a term loan agreement that the Plan entered into with Extreme Engineering at an interest rate of 3.15% to be repaid over 50 years (the stock and loan transaction together, the "ESOP Transaction" or "Transaction").

6.     As a result of the ESOP Transaction, Extreme Engineering became 100% employee owned.

7.      The Trustee represented the Plan and its participants as trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf.

8.      The ESOP Transaction allowed Selling Shareholders to unload their interests in Extreme Engineering above fair market value, for the reasons explained below, and saddle the Plan with tens of millions of dollars of debt over a 50-year repayment period to finance the Transaction. The Trustee failed to fulfill its ERISA duties, as trustee and fiduciary, to the Plan and its participants, including Plaintiff.

9.      Selling Shareholders are parties in interest who sold shares in the ESOP Transaction and received proceeds from the Transaction. Selling Shareholders are liable under ERISA for knowingly participating in the prohibited stock transaction and the Trustee's breaches of fiduciary duty under ERISA.

10.     Through this action, Plaintiff seeks to enforce his rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants resulting from their causing prohibited transactions and breaches of fiduciary duty or knowingly participating in prohibited transactions, and equitable relief, including rescission of the ESOP Transaction and removal of fiduciaries who have failed to protect the Plan. Plaintiff requests that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge any profits, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

## JURISDICTION AND VENUE

11.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Trustee to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against the Trustee and Selling Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

12.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a Defendant resides or may be found in this District. The Plan is administered in Verona, Wisconsin.

## PARTIES

14.     Plaintiff Scott MacTaggert is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2018. Plaintiff resides in Janesville, Wisconsin. He was a Senior Technician at Extreme Engineering. He was employed there from October 5, 2009, to June 11, 2021. He was vested under the Plan's terms in shares of Extreme Engineering in his Plan account.

15.     Defendant PFS is a limited liability company with its principal place of business at 7433 N. Beach Court, Fox Point, Wisconsin 53217. It is in the business of acting as a fiduciary and trustee to mid-market institutional investors, including ESOPs and retirement trusts. PFS

advertises that its roles include transactional fiduciary, fiduciary committee member, independent board of director member, and ESOP trustee.

16.    Defendant John Michael Maier is and was at the time of the ESOP Transaction the President and Founder of PFS. Defendant Maier's business address is at 7433 N. Beach Court, Fox Point, Wisconsin 53217.

17.    PFS and John Michael Maier are and were the Plan's Trustee at the time of the ESOP Transaction. The Trustee had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan. John Michael Maier was, at all relevant times, the sole member and decision maker for PFS. PFS acted in the ESOP Transaction through John Michael Maier.

18.    At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1102(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

19.    Defendant Robert S. Scidmore is and was at the time of the ESOP Transaction the Chief Executive Officer (CEO) of Extreme Engineering. He was a selling shareholder in the ESOP Transaction. He resides or may be found in this District, where Extreme Engineering is located.

20.    Defendant Robert S. Scidmore was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as an Extreme Engineering officer or director (or an individual having powers or responsibilities similar to those of officers or

5

directors); and/or as a 10 percent or more shareholder of Extreme Engineering, directly or indirectly.

21.    Defendant Bret Farnum was at the time of the ESOP Transaction the Vice President of Sales of Extreme Engineering. He was a selling shareholder in the ESOP Transaction.

22.    Defendant Bret Farnum was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction as an Extreme Engineering officer or director (or an individual having powers or responsibilities similar to those of officers or directors); and/or as a 10 percent or more shareholder of Extreme Engineering, directly or indirectly.

## FACTUAL ALLEGATIONS

23.    Founded in 2002, Extreme Engineering bills itself as a leader in the design, manufacture, testing, and support of high-quality, cost-effective, hardware and software solutions for the embedded computing market. Extreme Engineering is headquartered at 9901 Silicon Prairie Parkway, Verona, Wisconsin 53593. Extreme Engineering had more than 150 employees at the time of the ESOP Transaction.

24.    Extreme Engineering was incorporated in Wisconsin on July 26, 2002.

25.    Extreme Engineering stock is not and never was readily tradeable on an established securities market.

26.    Extreme Engineering adopted the Plan with an effective date of January 1, 2018.

27.    The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

28.     The Plan is intended to be an employee stock ownership plan as defined by Code § 4975(e)(7). The Plan was designed to invest primarily in the employer securities of Extreme Engineering.

29.     The Plan's principal asset was Extreme Engineering stock at all times since the ESOP Transaction.

30.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

31.     Extreme Engineering is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

32.     The Plan's Forms 5500 identify Extreme Engineering as the sponsor and administrator of the Plan.

33.     The Plan's SPD discloses that Extreme Engineering is the sponsor and administrator of the Plan.

34.     Employees of Extreme Engineering participate in the Plan.

35.     Extreme Engineering is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

36.     Extreme Engineering was an ERISA fiduciary to the Plan as its administrator.

37.     Extreme Engineering is a named fiduciary under the terms of the Plan document, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).

38.     The Schedule H, Line 4i, Schedule of Assets (Held at End of Year) in the Plan's Forms 5500 represents that Extreme Engineering is a party in interest.

39.     Extreme Engineering is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

40.     The Plan's Forms 5500 were signed on behalf of Extreme Engineering, as plan administrator, under penalty of perjury.

41.     Extreme Engineering appointed the Trustee as trustee of the Plan. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Extreme Engineering stock.

42.     As trustee for the Plan, it was the Trustee's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and Extreme Engineering, directly or indirectly, including acquisitions of Extreme Engineering stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

43.     In January 2019, the Selling Shareholders sold 896,000 shares of Extreme Engineering common stock to Extreme Engineering, representing 100% of the outstanding shares of the company's common stock. Simultaneously, the Plan purchased 358,400 shares of Extreme Engineering common stock from Extreme Engineering for $80,377,400, representing 100% of the outstanding common stock of the company, which was financed by a term loan agreement that the Plan entered into with Extreme Engineering at an interest rate of 3.15% to be repaid over 50 years. At that time, Extreme Engineering became 100% employee owned.

44.     Plaintiff was allocated shares of Extreme Engineering stock in his individual account in the Plan in 2019 and 2020. He was 100% vested in his Extreme Engineering shares.

45.     Defendant Robert S. Scidmore was CEO of Extreme Engineering prior to the ESOP Transaction beginning in 2003, at the time of the 2019 ESOP Transaction, and after the ESOP Transaction to the present.

46.     Selling Shareholders at all times controlled Extreme Engineering through their appointment of a majority of directors, and officer positions they held or otherwise controlled by appointment, including CEO.

47.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases. It is common practice in the ESOP creation industry for plans to pay for control when the plans acquire more than 50% of company stock because ESOP trustees assume majority ownership equates to control. Typically, however, control in fact remains with the selling shareholders who control the board and senior management and through them retain control. Further, the company or board can fire the trustee if it does not cooperate, making the voting powers associated with majority ownership illusory. The Trustee here operated in the same manner, as detailed below. The Plan paid a control premium or on a control basis for Extreme Engineering even though the Plan did not obtain control over the Extreme Engineering Board of Directors upon its 2019 purchase of the company. Further, the Plan did not receive a discount for lack of control. The Plan therefore overpaid for Extreme Engineering. Selling Shareholders retained control of the Board as a result of warrants received in exchange for their Extreme Engineering shares and other Transaction and/or corporate documents.

48.     The Trustee is subject to liability for a payment by the Plan of more than fair market value for Extreme Engineering stock caused by the Plan's payment of a control premium or on a control basis where a previous owner or owners retained control of Extreme Engineering,

the Plan's failure to receive a discount for lack of control, and/or other factors in the Trustee's faulty valuation of Extreme Engineering in the ESOP Transaction.

49.    In January 2021, the U.S. Department of Labor ("DOL") forced Defendant PFS and Defendant Maier out of the ESOP creation business. In *Scalia v. Professional Fiduciary Services, LLC*, the parties agreed to a Consent Order and Judgment that provided: "PFS and John Michael Maier will not enter into an engagement agreement to serve as the trustee of an employee stock ownership plan ('ESOP') subject to the requirements of Title I of ERISA for the purpose of such ESOP's initial purchase of non-publicly traded employer stock." *See* Consent Order and Judgment at 4, *Scalia v. Professional Fiduciary Services, LLC*, No. 7:19-cv-07874 (S.D.N.Y. Jan. 12, 2021), ECF No. 30 ("Consent Order"). The Consent Order also required payment from PFS, which was sued as a fiduciary ESOP trustee, to settle all DOL's claims.

50.    The Consent Order followed DOL's investigation and filing of suit against PFS because DOL concluded PFS had relied on unrealistic projections and improperly caused an ESOP to pay a control premium, which caused the ESOP to overpay for stock above fair market value. Plaintiff alleges the Trustee used the same or similarly deficient methodology in the January 2019 ESOP Transaction, which preceded the DOL's lawsuit against PFS.

51.    The appraisal used by the Trustee in the ESOP Transaction included an industry and economic analysis, which considered companies with different characteristics than Extreme Engineering.

52.    Extreme Engineering provided financial projections to the Trustee for the valuation of the ESOP Transaction. The financial projections were unreasonably optimistic.

53.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery, based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases. The Trustee did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. The Trustee's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for Extreme Engineering stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Extreme Engineering stock in the ESOP Transaction faulty.

54.    In breach of their duty of loyalty to plans and their participants and beneficiaries, ESOP trustees have defined and employed deficient "industry" standards for themselves alone that deviate from sound business practices employed by non-ESOP buyers in the so-called "real world" and required by ERISA. Incentives to the Trustee to fail to exercise care, skill, prudence and diligence in the interest of Plan participants and beneficiaries in the ESOP Transaction by failing to apply sound business principles of evaluation and to conduct a prudent investigation and negotiation included the possibility of business from sellers of companies who understood that the Trustee applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, referrals for such work by other service providers in the ESOP creation and administration business, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

55.     Every defense expert counsel has seen testify on the standards of care has talked about ESOP trustee standards rather than hypothetical prudent persons or hypothetical well-informed buyers and sellers, which tries to create insular and self-fulling standards that are incompatible with ERISA standards.

56.     The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of Extreme Engineering shares at the time of the ESOP Transaction.

57.     The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their Extreme Engineering shares at the time of the ESOP Transaction.

58.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Extreme Engineering, at a time that it was owned by Selling Shareholders, agreed to indemnify the Trustee in connection with the ESOP Transaction ("Indemnification Agreement"). The Indemnification Agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

59.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Indemnification Agreement does not contain an exemption addressing violation of the per se prohibited transaction rules under ERISA § 406. The Indemnification Agreement does not require payment of interest or otherwise account for the time value of money should the Trustee ultimately be required to reimburse Extreme Engineering.

60.     The Indemnification Agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because the Trustee violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

61.     Payment by Extreme Engineering of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to the Trustee necessarily would adversely impact Extreme Engineering's equity value and therefore the value of Plan assets. Direct payment or reimbursement of the Trustee's attorneys' fees, costs, litigation expenses, and liabilities by Extreme Engineering, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

62.     The Indemnification Agreement is also barred by the Consent Order in *Scalia v. Professional Fiduciary Services, LLC*, which provides: "PFS will not accept from any ERISA-covered plan, or from any company owned in whole or in part by a plan, any indemnification payments or advance payment of legal fees and associated costs related to a breach of fiduciary claim against PFS." Consent Order and Judgment at 5, *Scalia v. Professional Fiduciary Services, LLC*, No. 7:19-cv-07874 (S.D.N.Y. Jan. 12, 2021), ECF No. 30.

## CLAIMS FOR RELIEF

## COUNT I

**Causing Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Trustee PFS and John Michael Maier**

63.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

64.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee PFS and John Michael Maier, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Extreme Engineering stock, with a party in interest, here

Selling Shareholders and Extreme Engineering, directly or indirectly, as took place in the ESOP Transaction.

65.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here Extreme Engineering, as took place in the ESOP Transaction.

66.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Selling Shareholders and Extreme Engineering, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Extreme Engineering stock and in continuing payments on the loan.

67.    The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in its capacity as trustee for the Plan.

68.    The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

69.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

70.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

14

71.     The Trustee, PFS and John Michael Maier, has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Trustee PFS and John Michael Maier

72.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

73.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

74.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

75.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

15

76.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

77.     The Trustee, PFS and John Michael Maier, was required to undertake an appropriate and independent investigation of the fair market value of Extreme Engineering stock in or about January 2019 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Extreme Engineering stock purchased by the Plan.

78.     The Trustee was required to act independently on behalf of the Plan, to probe projections and other information provided by Extreme Engineering management.

79.     The Trustee was required to negotiate for the Plan to pay no more than fair market value for Extreme Engineering stock in the ESOP transaction, and it failed to do so.

80.     The Trustee breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

81.     The Trustee has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

### **COUNT III**

**Violations of ERISA §§ 410 and 404(a)(1)(A), (B),**
**29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B) against Trustee PFS and John Michael Maier**

82.     Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

83.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve the Trustee, a Plan fiduciary, of

responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

84.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

85.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

86.     The indemnification agreement purports to provide payment or reimbursement for the benefit of the Trustee for its expenses, losses, costs, and damages, including but not limited to attorneys' fees.

87.     To the extent that the indemnification agreement attempts to relieve the Trustee of its responsibility or liability to discharge its duties under ERISA, or attempts to have Extreme Engineering (a Plan-owned company) and thereby the Plan be responsible for the Trustee's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

88.     To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity

17

and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

89.    Exercise of the Indemnification Agreement would breach ERISA's fiduciary provisions because it is barred pursuant to the Consent Order in *Scalia v. Professional Fiduciary Services, LLC*. Indemnification of the Trustee by the Plan or its wholly-owned company Extreme Engineering in violation of an agreement with DOL and court order would not be prudent or for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan.

90.    As a result of the foregoing, any Indemnification Agreement between the Trustee and Extreme Engineering and/or the Plan purporting to cover the Trustee's services in the ESOP Transaction should be declared void and the Trustee should be ordered to disgorge any indemnification payments made by Extreme Engineering and/or the Plan, plus interest.

## COUNT IV

### Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3),
### Against the Selling Shareholders

91.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

92.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

93.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the

transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

94.    As a result of the prohibited stock transaction described above, Selling Shareholders received Plan assets in payments above fair market value for their Extreme Engineering stock.

95.    Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

96.    Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase, directly or indirectly, of their Extreme Engineering stock in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that they were Extreme Engineering officers or otherwise parties in interest to the Plan, and (5) that the Trustee caused the Plan to engage in the prohibited stock transaction.

97.    As parties to the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by the Trustee on behalf of the Plan, as the sellers of more than $80 million dollars in stock with an interest in having knowledge of and competently negotiating the Transaction, as officers and directors of Extreme Engineering and as selling shareholders, Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction under ERISA § 406(a). As parties in interest, Selling Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

98.    Selling Shareholders have profited from the prohibited stock transaction in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

99.     Selling Shareholders are subject to appropriate equitable relief including

disgorgement of any ill-gotten gains they received in connection with the ESOP Transaction,

accounting for profits, having a constructive trust placed on any proceeds received (or which are

traceable thereto), having the transactions rescinded, requiring all or part of the consideration to

be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and

(b), on behalf of the following class:

> All vested participants in the Extreme Engineering Solutions, Inc. Employee
> Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the
> date of the January 2019 ESOP Transaction or anytime thereafter. Excluded from
> the Class are the shareholders who sold their Extreme Engineering Solutions, Inc.
> ("Extreme Engineering") stock to the Plan, directly or indirectly, and their
> immediate families; the directors of Extreme Engineering and their immediate
> families; and legal representatives, successors, and assigns of any such excluded
> persons.

101.    The Class is so numerous that joinder of all members is impracticable. Although

the exact number and identities of Class members are unknown to Plaintiff at this time, the

Plan's most recent Form 5500 reports that as of December 31, 2020, there were 308 participants

in the Plan.

102.    Questions of law and fact common to the Class as a whole include, but are not

limited to, the following:

> i.     Whether the Trustee served as trustee in the Plan's acquisition of Extreme
>        Engineering stock;
>
> ii.    Whether the Trustee was an ERISA fiduciary of the Plan;

20

iii. Whether the Trustee caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Extreme Engineering stock and take loans from parties in interest;

iv. Whether the Trustee engaged in good faith valuations of the Extreme Engineering stock in connection with the ESOP Transaction;

v. Whether the Trustee caused the Plan to pay more than fair market value for Extreme Engineering stock;

vi. Whether the Trustee breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Extreme Engineering stock in or about January 2019;

vii. Whether Extreme Engineering was a party in interest;

viii. Whether Selling Shareholders were parties in interest;

ix. Whether Selling Shareholders, as parties in interest, knowingly participated in the prohibited stock transaction;

x. The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations; and

xi. The appropriate relief for Defendants' violations of ERISA.

103. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of his Plan account because the Plan paid above fair market value and took on an excessive loan for Extreme Engineering stock, resulting in him being allocated fewer shares of stock, and he continues to suffer such losses in the present because the Trustee failed to correct the overpayment by the Plan.

104.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

105.    Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Trustee, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

106.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.    Declare that Defendant Trustee caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B.    Declare that Selling Shareholders knowingly participated in a prohibited transaction with the Plan in violation of ERISA;

C.    Declare that Defendant Trustee breached its fiduciary duties under ERISA to the Plan and the class members;

D.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

E.    Order rescission of the ESOP Transaction;

F.    Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

G.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

H.    Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

I.    Order the removal of the Trustee, PFS and John Michael Maier, as Plan fiduciary and enjoin the Trustee from acting as a fiduciary for any employee benefit plan that covers or includes any Extreme Engineering employees or members of the Class;

J.    Declare that the indemnification agreement between Defendant Trustee and Extreme Engineering violates ERISA § 410, 29 U.S.C. § 1110;

K.    Order Defendant Trustee to reimburse Extreme Engineering for any money paid by Extreme Engineering under any indemnification agreement between the Trustee and Extreme Engineering, plus interest;

L.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

M.   Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

N.   Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

O.   Order Defendants to pay prejudgment and post-judgment interest;

P.   Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and his counsel as class counsel; and

Q.   Award such other and further relief as the Court deems equitable and just.

Dated:    July 7, 2022

Respectfully submitted,

*/s/ William E. Parsons*
William E. Parsons
Connor J. Clegg
HAWKS QUINDEL S.C.
409 E. Main Street
Madison, WI 53703
Telephone: (608) 257-0040
Facsimile: (608) 256-0236
wparsons@hq-law.com
cclegg@hq-law.com

Gregory Y. Porter (*pro hac vice to be filed*)
Ryan T. Jenny (*pro hac vice to be filed*)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Patrick O. Muench (*pro hac vice to be filed*)
BAILEY & GLASSER LLP
318 W. Adams Street
Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

*Attorneys for Plaintiff*