IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

SCOTT MACTAGGERT, on behalf of the
Extreme Engineering Solutions, Inc.
Employee Stock Ownership Plan, and on
behalf of a class of all other persons
similarly situated,

      Plaintiffs,                                      OPINION and ORDER

      v.                                            22-cv-371-wmc

PROFESSIONAL FIDUCIARY SERVICES, LLC,
JOHN MICHAEL MAIER, ROBERT S. SCIDMORE
and BRET FARNUM,

      Defendants.
_____

      Plaintiff Scott MacTaggert is a participant in an employee stock ownership plan ("the ESOP") for employees of Extreme Engineering Solutions, Inc., a company that designs, manufactures and tests computing products. In this putative class action under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001, et al, brought on behalf of the ESOP and other ESOP participants, plaintiff claims that the ESOP overpaid for Extreme Engineering's stock in a transaction facilitated by defendant Professional Fiduciary Services, LLC ("PFS"). More specifically, plaintiff claims that PFS and its owner, John Michael Maier, violated various ERISA provisions in conjunction with the transaction, as did two executives of Extreme Engineering who sold their shares back to the company in advance of the ESOP transaction.

      All defendants have moved to dismiss plaintiff's complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule

1

12(b)(6). The court will grant that motion because plaintiff has failed to plead an injury-in-fact, as required to show that he has standing to sue. However, plaintiff will be given a chance to file an amended complaint, so long as he has a good faith basis for doing so.[1]

ALLEGATIONS OF FACT[2]

In 2018, Extreme Engineering, a privately held entity, created the ESOP at issue in this case. The ESOP invests primarily in the employer securities of Extreme Engineering for the benefit of the company's employees, who were allocated shares of Extreme Engineering stock that were set up as individual accounts. Extreme Engineering appointed defendant PFS as trustee of the Plan. During the relevant time period, defendant John Michael Maier was the sole member and decision maker for PFS.

PFS was responsible for negotiating and authorizing the purchase of Extreme Engineering stock on behalf of the ESOP, including ensuring that the ESOP paid no more than fair market value for the stock. Because Extreme Engineering is not a publicly traded company, PFS obtained an appraisal to determine the value of the company's stock. The appraisal included an industry and economic analysis comparing the value of similar companies, as well as financial projections provided by the company to PFS. According to

---

[1] Also before the court is plaintiff's motion for leave to file a surreply in opposition to defendants PFS and Maier's motion to dismiss (dkt. #46), which prompted a flurry of additional filings by all parties. Although most of plaintiff's arguments were repetitive, the motion will be granted and the court has considered all filings by the parties.

[2] The following allegations are drawn from plaintiff's complaint and accepted as true for purposes of resolving defendants' pending motion to dismiss *McCray v. Wilkie*, 966 F.3d 616, 618 (7th Cir. 2020), although additional allegations from the complaint are included in the opinion section.

plaintiff, however, the comparator companies had "different characteristics than Extreme Engineering" and the "financial projections were unreasonably optimistic." (Cpt. (dkt. #1) ¶¶ 51, 52.)

To effectuate the ESOP transaction, Extreme Engineering first purchased all of the company's outstanding shares of common stock from defendant Robert S. Scidmore, the company's CEO, defendant Bret Farnum, the company's Vice President of Sales, and other individuals. The ESOP then purchased all of the company's common stock from Extreme Engineering for $80,377,400, financed by a 50-year loan from Extreme Engineering to the ESOP, at an interest rate of 3.15%. After the close of the transaction, Extreme Engineering became 100% employee owned.

According to plaintiff, the ESOP overpaid for Extreme Engineering stock because PFS failed to perform sufficient due diligence by, among other things, relying on "unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or other factors that rendered its valuation of Extreme Engineering stock in the ESOP transaction faulty." (*Id.* ¶ 53.) In addition, plaintiff alleges that the ESOP likely paid a "control premium" for Extreme Engineering stock, but did not obtain control over the company. (*Id.* ¶ 47.)

OPINION

Plaintiff now brings claims against PFS and Maier ("the Trustee Defendants"), as well as Scidmore and Farnum as officers of Extreme Engineering ("Selling Shareholder Defendants"). Plaintiff contends that the Trustee Defendants: (1) caused the ESOP to

3

engage in a prohibited transaction under 29 U.S.C. § 1106(a) when they purchased stock from interested parties (Count I); (2) breached their fiduciary duties under § 1104(a)(1) by failing to undertake an appropriate and independent investigation of the fair market value of the Extreme Engineering stock (Count II); and (3) breached their fiduciary duties under § 1110(a) by entering into an indemnification agreement that attempts to relieve the Trustee Defendants' liability for beach of fiduciary duty under ERISA (Count III). In Count IV, plaintiff claims that the Shareholder Defendants violated § 1132(a)(3), by "knowingly participating" in a prohibited transaction. Plaintiff contends that the Trustee Defendants are liable to the ESOP for the difference between the price paid by the ESOP and the fair market value of Extreme Engineering shares at the time of the ESOP Transaction. They contend that the Selling Shareholder Defendants are liable to the ESOP for the difference between the price they received and the fair market value of their Extreme Engineering shares at the time of the ESOP transaction.

  Defendants move to dismiss three of these claims for lack of standing under Article III of the U.S. Constitution and failure to state a claim under ERISA. Because constitutional standing is a threshold, jurisdictional question, the court will address that first. As discussed below, the court concludes that the allegations in the complaint fail to show that plaintiff has suffered an injury-in-fact and thus, the case must be dismissed for lack of subject matter jurisdiction, although with leave to amend the complaint to address this defect.

I. **Standing**

To establish standing to sue, a plaintiff must show three things: (1) plaintiff suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury "is likely to be redressed" if the plaintiff obtains a "favorable judicial decision" at the close of the lawsuit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Moreover, "Article III standing requires a *concrete* injury even in the context of a statutory violation," so "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341 (emphasis added). *See also Thole v. U.S. Bank*, 590 U.S. 538, 544 (2020) (a statutory violation of ERISA, standing alone, cannot constitute an injury for purposes of Article III standing). Further, a plaintiff must have standing for each claim and each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Here, both the Trustee and the Selling Shareholder Defendants argue that plaintiff has failed to plead allegations showing that he suffered an "injury in fact" because of defendants' allegedly unlawful actions. At the pleading stage, "general factual allegations of [Article III] injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (internal quotation marks and citation omitted). "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that

5

he cannot have been harmed." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013).

Plaintiff contends that the reduced value of his ESOP account caused by Extreme Engineering's allegedly inflated sale price qualifies as an injury-in-fact. Generally, monetary harm readily qualifies as a concrete injury in fact. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021); *see also, e.g., Lloyd v. Argent Tr. Co.*, No. 22CV4129 (DLC), 2022 WL 17542071, at *2 (S.D.N.Y. Dec. 6, 2022) (allegations that the company's "shares were overvalued when purchased, and that this harmed" the plaintiff's "financial interest in the ESOP" is the "kind of traditional monetary harm [that] is sufficient to support Article III standing"); *Placht on behalf of Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co.*, No. 21 C 5783, 2022 WL 3226809, at *3 (N.D. Ill. Aug. 10, 2022) (rejecting lack of standing argument where the plaintiff alleged that in an ESOP transaction the company's stock "was significantly devalued ... following the purchase").

As defendants point out, however, plaintiff does not actually allege that his ESOP account is worth less than it would be but for any action by defendants. Instead, although plaintiff's complaint alleges that he was allotted shares of Extreme Engineering stock to his individual ESOP account in 2019 and 2020 (Cpt. (dkt. #1) ¶¶ 14, 44, 103), he includes *no* specific information in his complaint about his ESOP account or its value. In contrast, defendants provided copies of the statements for plaintiff's account from 2019 and 2020, showing that the fair market value of the Extreme Engineering shares in December 31, 2019 was $258/share and $520/share in December 31, 2020. (Dkt. #23-3 and #23-4.) Similarly, defendants point out that the Plan's Form 5500, a publicly available annual

report filed with the Department of Labor, which discloses the financial condition of employee benefits plans, represents that as of December 19, 2019, the ESOP's total assets had grown from less than $500,000 one year earlier to $95.5 million. (Dkt. ##23-1; 23-2.) A year later, in the Plan's Form 5500 as of December 31, 2020, its total assets are represented to have grown again to $186 million. Accordingly, defendants argue that both plaintiff's own account statements and the Form 5500s show that he and other plan participants have only benefited from the success of the company as the value of their stock continued to rise. *See Lee v. Argent Tr. Co.*, No. 5:19-CV-156-BO, 2019 WL 3729721, at *4 (E.D.N.C. Aug. 7, 2019) (dismissing ERISA complaint for lack of standing where plaintiff alleged no injury and allegations instead suggested that "transaction did not injure her; it benefited her.").[3]

Plaintiff responds that neither his account balance nor the Plan's Forms 5500 establish a *lack* of injury. Indeed, plaintiff correctly points out that even if the value of the company *has* risen since the ESOP was formed, his account would be worth even more had

---

[3] Defendants argue that the court can take judicial notice of the Forms 5500 because it is a publicly available document to which plaintiff cited repeatedly in the complaint. (Cpt. (dkt. #1) ¶¶ 32, 38, 40, 101); *see Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) ("We may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings.") Some courts have taken judicial notice of a Form 5500, though acknowledging that the parties can still present arguments about the meaning of the data on the forms. *E.g., Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *3 (S.D.N.Y. Sept. 29, 2017); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015). Here, plaintiff objects to the court's taking judicial notice, arguing that although the forms are publicly filed, the *specific numbers* provided in the forms cannot be accepted as true. The court agrees with plaintiff that the specific value of the ESOP cannot be determined from the Form 5500 alone. However, defendants posit that the Forms 5500 show that the ESOP has increased in value since it was formed, and plaintiff provides no alternative interpretation or inference. That said, even without consideration of the Forms 5500, plaintiff has failed to allege sufficient facts to infer reasonably that his ESOP account has in fact been injured by defendants' alleged actions.

the Trustee Defendants fulfilled their fiduciary duties to ensure that the ESOP paid only fair market value for Extreme Engineering's stock. In other words, plaintiff argues that even if his ESOP account is doing well, it would be doing even *better* if the ESOP had not originally overpaid for Extreme Engineering stocks. While the court agrees with plaintiff that, in some cases, a plaintiff *could* suffer an actual injury despite having an account balance increase in value over time, plaintiff's argument that he is such a plaintiff is based solely on speculation rather than a reasonable inference from the facts actually alleged.

Indeed, plaintiff appears to rely almost entirely on his counsel's previous experience litigating other, unrelated ESOP cases. As defendants point out, the complaint here is itself nearly identical to the complaint filed in *Plutzer on behalf of Tharanco Grp., Inc. Emp. Stock Ownership Plan v. Bankers Tr. Co. of S. Dakota*, No. 1:21-CV-3632 (MKV), 2022 WL 596356 (S.D.N.Y. 2022), another ESOP case brought by plaintiff's counsel, with only the parties' names changed. However, allegations derived from counsel's experience in other cases involving different companies, trustees and transactions are hunches, not allegations of fact. *See United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001) (rejecting assertions based on "attorney's anecdotal evidence" derived from experience in unrelated cases); *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing complaint where "allegations in plaintiff's complaint appear to come from pleadings for other cases").

Regardless, as in *Plutzer*, the complaint here does not adequately allege that the ESOP overpaid for Extreme Engineering's stock, just that the stock purchase violated ERISA. *See Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-

8

561-CV, 2022 WL 17086483 (2d Cir. Nov. 21, 2022) ("[E]ven if overpayment may constitute a sufficient injury in fact in the general case, the complaint here does not adequately allege that overpayment occurred.") (citing *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.")).

Still, in defense of his complaint, plaintiff points to four sets of allegations from which he contends a reasonable inference of injury in fact is appropriate. *First,* he contends that defendants failed to conduct a reasonable and independent investigation of the value of Extreme Engineering stocks. But these allegations are wholly conclusory, with statements such as:

> based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases . . . [t]he Plan overpaid for Extreme Engineering stock in the ESOP Transaction due to the Trustee's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate comparable companies, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered its valuation of Extreme Engineering stock in the ESOP Transaction faulty.

(Cpt. (dkt. #1) ¶ 53.)

In other words, plaintiff provides a laundry list of generic valuation errors that PFS *may* have committed but fails to allege even one specific error that unreasonably inflated the value of Extreme Engineering stock at the time of the purchase. Plaintiff also includes no allegations about: PFS's qualifications; actual due diligence; valuation advisor;

valuation process; or negotiation of the transaction's monetary and other terms. Thus, the court is left with nothing but speculative, conclusory allegations, rather than adequate facts from which an overpayment injury could be reasonably inferred, and the likelihood that plaintiff's counsel is engaged in a fishing expedition (or worse).

    In particular, although a plaintiffs need not "describe in detail" the process the Trustee Defendants used, he must "allege facts from which a factfinder could infer that the process was inadequate." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.") For example, in *Allen*, the plaintiff alleged that the stock value dropped dramatically (22% decline in value that lasted years and ballooned to nearly 50%) after the ESOP transaction. *Allen*, 835 F.3d at 678. The plaintiffs in *Allen* also alleged that the ESOP loan came from the employer-seller with an uncommonly high interest rate, permitting an inference that the sale was risky or that shareholders executed the deal in order to siphon money from the Plan to themselves. *Id.* at 678–79. Specifically, the court found the 6.25% rate assigned the loan compared to the Reserve prime interest rate at the time of 3.25% suggested that the sale price was too high and was enough for purposes of surviving a motion to dismiss. *Id.* (citing https://www.comptroller.tn.gov/shared/pdf/interesttable.pdf). If anything, the alleged interest rate on the purchase loan here of 3.15% compared to the average Reserve prime rate of 4.9% during all of 2018, starting at 4.75% of the beginning of the year and ending at 5.5%, was particularly generous.[4]

---

[4] https://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm

The other cases on which plaintiff relies are similarly distinguishable. For example, in *Laidig v. GreatBanc Tr. Co.*, No. 22-CV-1296, 2023 WL 1319624 (N.D. Ill. Jan. 31, 2023), the court denied the defendants' motion to dismiss because the plaintiffs alleged that the defendants had pursued a years-long effort to sell their company to third-party buyers but failed because the company's debt level depressed its credit rating. *Id*. at *6. The plaintiffs in *Laidig* also alleged that the defendants should have known that the improved sales of the company -- a hand sanitizer manufacturer -- during the early months of the COVID-19 pandemic were unsustainable, yet relied upon in setting a purchase price. *Id.* Taken together, the court held that a plausible inference could be drawn that the company's stock was overvalued when the company's ESOP acquired it for roughly $400 million -- the same price that third-party buyers had repeatedly rejected for years. *Id.*

Similarly, in *Placht*, 2022 WL 3226809, at *8, the plaintiff alleged that the stock value had decreased significantly within five months of the sale, even as the company "continued to funnel money into the plan." Further, the plaintiff alleged that the ESOP paid $66,500,000 for company stock that five years later was worth $8.65 million. *Id.* at *2.

Finally, in *Niel v. Zell*, 767 F. Supp. 2d 933 (N.D. Ill. 2011), the court found that the plaintiffs had standing after alleging an ESOP paid $250 million for stock now worth zero because of the defendant's alleged misconduct. *Id*. at 950–51.

In contrast, here there are *no* specific allegations in the complaint to support a reasonable inference that the Trustee Defendants failed to conduct an appropriate investigation into the value of the stock, acted in good faith, or disregarded their fiduciary

11

obligations to members of the ESOP. In particular, plaintiff's complaint includes no factual allegations about the value of the stock pre- or post-ESOP transaction, the interest rate of the loan, other unreasonable terms of sale, or that outside purchasers or financing had been sought but were unavailable at terms similar than negotiated here.

*Second*, plaintiff contends that his overpayment theory is supported by an allegation that the ESOP paid a "control premium" for Extreme Engineering stock, even though it did not initially obtain control over the company. However, plaintiff does *not* allege any facts suggesting that the ESOP actually paid a control premium at all, much less that such a premium was inappropriate given that the ESOP ultimately took 100% ownership of Extreme Engineering. Instead, he alleges that "based on undersigned counsel's knowledge of ESOP-creation business practices gleaned from counsel's experience prosecuting many private company ESOP cases," ESOPs acquiring more than 50% of a company's stock often pay a control premium, even though the selling shareholders retain control. (Cpt. (dkt. #1) ¶ 47.)

For example, plaintiff's allegations differ substantially from those of the plaintiff in *Appvion*, on which plaintiff purports to rely. In that case, the Seventh Circuit held the plaintiff had adequately pleaded an ERISA claim based on allegations that: (1) an ESOP was created only after the struggling company failed to find a third-party buyer; (2) the officer and director defendants were motivated to inflate because they benefited from related, increased bonuses; and (3) they did so by artificially raising the company's price through exaggerated projections, excluding pension debt, and imposing a 10% control premium that was not justified based on the limited, actual control the ESOP acquired.

12

99 F.4th at 946. As for the 10% control premium in particular, the complaint in *Appvion* included a chart *detailing* the control premium's actual effect on the price the ESOP paid for company stock, as well as specific allegations regarding an agreement under which the ESOP had ceded control to the company's board of directors. *Id.* In contrast, plaintiff's speculative allegation here regarding a possible, inflated control premium having been charged amounts to little more than a rephrasing of his conclusory allegation that the ESOP overpaid for the company.

*Third*, plaintiff argues that the Trustee and Selling Shareholders Defendants both engaged in a "prohibited transaction" under 29 U.S.C. § 1106(a)(1)(E), which forbids a plan fiduciary from causing the plan to purchase shares in the plan's own company. Of course, if that prohibition were absolute, it would make all ESOPs illegal, as every ESOP's purchase of stock from company officers, directors or significant shareholders is technically a "prohibited transaction" under § 1106(a)(1)(E). As plaintiff is aware, an exception in 29 U.S.C. § 1108(e) allows a plan to buy the employer's stock "for adequate consideration," defined in 29 U.S.C. § 1002(18)(B) as the fair market value of the stock. As applicable to the standing analysis in particular, an employee ESOP participant would not suffer an injury from a "prohibited transaction" if the employer's stock was purchased for fair market value.[5] Thus, plaintiff's allegation that defendants engaged in a "prohibited transaction"

---

[5] Plaintiff correctly points out that because the § 1108(a) exception is an affirmative defense, he was not necessarily required to plead facts showing that the transaction was for less than fair market value in order to state a claim under § 1106(a)(1)(E). *See Appvion*, 99 F.4th at 948 (citing *Allen*, 835 F.3d at 676.) However, as discussed above, pleading around a possible statutory exception is *not* the same as pleading facts sufficient to establish an injury-in-fact for constitutional standing purposes, and neither *Appvion* nor *Allen* address constitutional standing.

is not sufficient to infer that he suffered an actual injury for purposes of standing, but rather only that an ESOP transaction occurred.

*Fourth* and finally, plaintiff contends that he was injured at the time that Extreme Engineering was owned by the Selling Shareholders because the company agreed to indemnify the Trustee in connection with the ESOP Transaction in violation of 29 U.S.C. §§ 1110 and 1104(a)(1)(A) and (B). Those provisions state that any provision in an agreement purporting to relieve a fiduciary from liability for any breach of duty (other than through purchase of third-party insurance) shall be void as against public policy. The Department of Labor has further interpreted this section to allow an indemnification provision so long as it leaves a fiduciary "fully responsible and liable" for breaches of a fiduciary obligation, while finding that any arrangement for indemnification of a plan fiduciary *by the plan* is void. *See* 29 C.F.R. § 2509.75-4. [6]

Thus, despite plaintiff's argument to the contrary, the indemnification provisions contained in the agreements between Extreme Engineering and the Trustee Defendants are likely entirely permissible. "Indemnification provisions are enforceable where the provision 'permits recourse by the [indemnitor] in the case of a breach of fiduciary obligation by such fiduciary." 29 U.S.C. § 1110(a). Indeed, the indemnification provisions at issue here provide that the indemnitor (Extreme Engineering) has no duty to indemnify the fiduciary (the Trustee Defendants) in instances where the fiduciary has breached its

---

[6] Plaintiff also argues that a January 2021 consent order defendants entered into in another case involving a different plaintiff barred the agreement here. (Cpt. (dkt. #1) ¶ 62.) However, that consent order involved different parties, was entered into after the ESOP transaction in this matter was completed, and has no bearing on the indemnification agreement in this case.

fiduciary duties, engaged in willful misconduct, or breached obligations under their agreement. (Indemnification Agreement (dkt. #44-1) ¶ 5.)  Thus, it not only expressly requires the Trustee to act within the bounds of the duties imposed by ERISA, but *excludes* indemnification for any breach of those duties.  Regardless, plaintiff has not alleged that the indemnification agreement here has caused him to suffer an actual injury sufficient to infer constitutional standing in this case.

## II. Leave to Amend

For all of the reasons discussed above, the court concludes that plaintiff's general allegations of injury are not enough to satisfy the injury-in-fact requirement of Article III standing.  Instead, the court agrees with defendants that plaintiff's complaint essentially alleges that a typical ESOP transaction occurred without a specific harm or injury flowing to plaintiff.

Because the court is dismissing plaintiff's complaint for failure to plead allegations sufficient to establish subject matter jurisdiction, however, the dismissal is without prejudice.  Accordingly, plaintiff may have the opportunity to file an amended complaint that includes specific, additional allegations addressing the deficiencies the discussed above sufficient to establish standing.  Of course, plaintiff should only file an amended complaint if he can plead sufficient facts in good faith to address those deficiencies.

ORDER

IT IS ORDERED that:

1) Plaintiff Scott MacTaggert's motion for leave to file a surreply (dkt. #46) is GRANTED.

2) Defendants' motions to dismiss (dkt. #18 and dkt. #21) are GRANTED and plaintiffs' complaint is DISMISSED without prejudice for lack of subject matter jurisdiction.

3) Plaintiff may have until **July 18, 2025**, to file an amended complaint establishing his standing to proceed if there is a good-faith basis for doing so.

Entered this 18th day of June, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge